UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA ORTEGA, et al., | Case No. 23-cv-05596-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| UNITEDHEALTH GROUP, INC., et al., | Re: ECF No. 29 |
| Defendants. | |

Before the Court is a motion to compel arbitration by Defendants UnitedHealth Group, Inc. ("UHG"), Optum Services, Inc. ("OSI"), and Optum Car, Inc. ("OCI") (collectively "Defendants"). ECF No. 29. The Court will grant the motion.

## I.      BACKGROUND

Plaintiffs Theresa Ortega and Gabriela Rocha, both residents of California, are former employees of Defendants who worked at Defendants' California locations. ECF No. 28 ¶ 26. They bring this action individually and on behalf of a class, alleging that Defendants failed to provide sufficient notice before terminating their employment, among other claims.

Ortega was hired in April 2023 as an administrative assistant to the facilities director, while Rocha was hired in April 2023 as a registration clerk. *Id.* Upon beginning their employment, Plaintiffs each received an offer letter, ECF No. 29-2 at 6–9, 10–13, and an arbitration agreement, which they signed electronically, ECF No. 29-2 at 15–19, 21–25. As relevant here, the offer letters contain the following provisions concerning arbitration:

> As a condition of your employment, you must agree to be bound by the terms of UnitedHealth Group's Employment Arbitration Policy. The Arbitration Policy is a binding contract between you and UnitedHealth Group to resolve through arbitration all covered employment-related disputes that are based on a legal claim, and

1

2

3

> mutually waive the right to a trial before a judge or jury in court in
> favor of final and binding arbitration.  By accepting employment
> with UnitedHealth Group, you agree to be bound by the terms of the
> Arbitration Policy [. . . .] [and] you will have agreed to all terms of
> this offer letter and its attachments.

*Id.* at 7, 11.  The arbitration agreement includes the following language:

> All disputes covered by the Policy shall be decided by an arbitrator
> through arbitration and not by way of court or jury trial.
>
> [. . .]
>
> This Policy creates a contract between UnitedHealth Group and
> employee requiring both parties to resolve employment-related
> disputes (except the excluded disputes listed below) that are based
> on a legal claim through final and binding arbitration.  Arbitration is
> the exclusive forum for the resolution of such disputes, and the
> parties mutually waive their right to a trial before a judge or jury in
> federal or state court in favor of arbitration under the Policy.
>
> [. . .]
>
> Covered claims include any disputes regarding the Policy . . . or its
> interpretation, enforcement, applicability, unconscionability,
> arbitrability or formation, or whether the Policy or any portion of the
> Policy is void or voidable, with the exception noted in the Class and
> Representative Actions Waivers section below.

*Id*. at 15, 21.

On or around August 2023, Defendants conducted a widespread layoff that impacted about

700 employees in California and over 1,000 employees nationally.  *Id.* ¶ 27.  Ortega and Rocha

were informed on August 10, 2023 that they were being laid off effective August 24, 2023.  *Id.*

Plaintiffs allege that "Defendants did not provide the proper 60-days' notice or payment in

lieu of notice as required to institute a mass layoff of the workforce under California and federal

law."  *Id.*  They now bring nine claims, including: (1) violation of the Worker Adjustment and

Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2101, *et seq.*; (2) violation of the California

WARN Act, Cal. Lab. Code §§ 1400 *et seq*.; (3) violation of Cal. Lab. Code § 206; (4) violation of

Cal. Lab. Code § 206.5; (5) violation of Cal. Lab. Code § 203; (6) violation of Cal. Lab. Code §

226; (7) declaratory relief pursuant to 28 U.S.C. §§ 2201-02; (8) violation of California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (9) violation of the

Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2699 *et seq*.

Defendants now bring this motion to compel arbitration, arguing that Ortega and Rocha

United States District Court
Northern District of California

1  "entered into valid mutual agreements to arbitrate disputes arising out of or relating to their

2  employment with Defendants."  ECF No. 29-1 at 7.

3  **II.      JURISDICTION**

4       The Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and it

5  has supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

6  **III.     LEGAL STANDARD**

7       Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,

8  irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

9  revocation of any contract . . . ."  9 U.S.C. § 2.  This provision reflects "both a liberal federal

10  policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."

11  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations

12  omitted); *see Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013)

13  (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) ("The

14  [FAA] . . . has been interpreted to embody 'a liberal federal policy favoring arbitration.'").  On a

15  motion to compel arbitration, the Court's role under the FAA is "limited to determining (1)

16  whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

17  encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,

18  1130 (9th Cir. 2000) (citing 9 U.S.C. § 4).  The party moving to compel arbitration bears the

19  burden of proving that an agreement to arbitrate exists by a preponderance of the evidence.

20  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972 (1997).  Moreover, the party

21  challenging enforcement of an arbitration agreement must prove any fact necessary to its defense

22  by a preponderance of the evidence.  *Id.*

23       Under the FAA, parties may agree to have an arbitrator decide "'gateway' questions of

24  'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement

25  covers a particular controversy."  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. ——

26  –, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69,

27  (2010)) ("*Rent-A-Center*").

28       To be sure, "a party cannot be required to submit to arbitration any dispute which he has

*United States District Court*
*Northern District of California*

3

United States District Court
Northern District of California

not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).   Therefore, a court must first determine whether a valid arbitration agreement exists before referring a dispute to an arbitrator. *Henry Schein*, 139 S. Ct. at 530 (citing 9 U.S.C. § 2).   Courts "should apply ordinary state-law principles that govern the formation of contracts" to determine whether a valid arbitration agreement exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).   As such, contract defenses, including fraud, duress, or unconscionability, can invalidate arbitration agreements. *AT&T Mobility LLC*, 563 U.S. at 339.

When a district court finds that a valid arbitration agreement exists, it must then determine whether the parties contracted to delegate threshold arbitrability questions to an arbitrator by "clear and unmistakable evidence." *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options*, 514 U.S. at 944).   Upon a finding that the parties clearly and unmistakably contracted to delegate threshold arbitrability questions to an arbitrator, a district court may not rule on arbitrability questions. *Id.*

## IV.   DISCUSSION

### A.   Incorporation by Reference

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("*Khoja*").   "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*   "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself.   The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* at 1002.   Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity . . .  is not contested," *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (alteration in original) (internal quotation marks and citation omitted).   "For example, a court may consider under the incorporation-by-reference

4

1    doctrine an employee healthcare plan where the plaintiff's claims are premised upon the plaintiff's

2    coverage under the plan." *Almaznai v. S-L Distribution Co., LLC*, No. 20-CV-08487-JST, 2021

3    WL 4457025, at *3 (N.D. Cal. June 21, 2021) (citing *Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th

4    Cir. 1998), *as amended* (July 28, 1998)).

5            The Court sua sponte incorporates by reference a copy of the offer letters provided to

6    Ortega and Rocha, as well as a copy of the arbitration agreements.  *See* ECF No. 29-2 at 6–25

7    (Exhs. A–C).  Even though Plaintiffs did not "allege or describe the contents" of these documents

8    in their complaint, *see Ritchie*, 342 F.3d at 908, their claims necessarily depend upon them.  For

9    example, Plaintiffs allege that, "[a]s former employees of Defendants, [they] are bringing this

10    employment case because they were laid off as part of a countrywide mass layoff conducted by

11    Defendants in August 2023."  ECF No. 28 ¶ 1; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076

12    (9th Cir. 2005) (incorporating by reference various web pages attached to ESPN's motion to

13    dismiss even though the complaint did not "allege or describe" their contents because the claims

14    necessarily depended on them).  Further, Plaintiffs' opposition does not dispute the authenticity or

15    existence of these documents.  *See generally* ECF No. 35.  Therefore, the Court incorporates by

16    reference the offer letters and the arbitration agreements attached to Defendants' motion to compel

17    arbitration.

18        **B.**        **Delegation of Issue of Arbitrability**

19            Plaintiffs do not dispute that they each electronically signed an arbitration agreement,

20    which includes a delegation clause.  *See* ECF No. 29-2 at 15, 21 ("Covered claims include any

21    disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability,

22    applicability, unconscionability, arbitrability or formation . . . .").  However, Plaintiffs argue the

23    Court should not compel arbitration because the delegation clause is not clear and unmistakable.

24            The crux of Plaintiffs' argument is that one provision of the arbitration agreement leaves

25    gateway issues such as arbitrability and enforceability to the arbitrator, while other provisions

26    allow the court to rule on these matters.  ECF No. 35 at 8 (citing ECF No. 29-2 at 15, 21).

27    Plaintiffs contend that "[S]ection B of the arbitration agreement purports to delegate enforceability

28    and voidability issues to the arbitrator," while Section D-15 "allows either party to bring 'an

United States District Court
Northern District of California

1  action in a court of competent jurisdiction to compel arbitration,'" and Section D-14 "is silent on

2  who can determine enforceability issues."  ECF No. 35 at 8–9.

3         Defendants respond that the agreement clearly delineates between "covered disputes" that

4  are subject to arbitration and certain provisions—namely, the Class Action Waiver and PAGA

5  Waiver—that are "carve[d] out" from the arbitration policy and may be determined only by a

6  court.  ECF No. 36 at 3.  Phrased slightly differently, they contend that "*other* than the validity of

7  the Class Action Waiver and PAGA Waiver, the arbitrability of all of Plaintiffs' claims, including

8  the gateway issues, is expressly delegated to the arbitrator."  *Id.* (emphasis in original)

9  (simplified).

10        The Court agrees with Defendants that the agreement "contains a clear and unmistakable

11  delegation of gateway issues of the arbitrability of Plaintiffs' claims to an arbitrator."  *Id.*  The

12  language in the arbitration agreement is unambiguous:  the first paragraph of Section B of the

13  agreement states, in relevant part, that "[t]his Policy creates a contract between UnitedHealth

14  Group and employee requiring both parties to resolve employment-related disputes (*except the*

15  *excluded disputes listed below*) that are based on a legal claim through final and binding

16  arbitration."  ECF No. 29-2 at 15, 21 (emphasis added).  Notably, in *Mohamed v. Uber Techs.,*

17  *Inc.*, 848 F.3d 1201 (9th Cir. 2016), the Ninth Circuit upheld a similar arbitration agreement.

18  There, the agreement at issue held that "[e]xcept as it otherwise provides, this Arbitration

19  Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a

20  court of law or before a forum other than arbitration."  *Id.* at 1207–08.  The agreement delegated

21  to the arbitrators, "without limitation," the authority to decide issues "relating to . . . the

22  'enforceability, revocability or validity of the Arbitration Provision or any portion of the

23  Arbitration Provision.'"  *Id.* at 1207–08.  However, like here, the agreement contained a "carve-

24  out provision . . . granting courts jurisdiction over challenges to the PAGA waiver."  *Id.* at 1209.

25  In finding the delegation clause clear and unmistakable, the Ninth Circuit noted that "[t]he clause

26  describing the scope of the arbitration provision was prefaced with '[e]xcept as it otherwise

27  provides.'"  *Id.*  This "eliminated the inconsistency between the general delegation provision

28  [which included 'without limitation' language] and the specific carve-out in the 2013

                                              6

1   Agreement." *Id.*

2       "In accordance with Supreme Court precedent," the Court is "required to enforce these

3   agreements 'according to their terms' and, in the absence of some other generally applicable

4   contract defense, such as fraud, duress, or unconscionability, let an arbitrator determine

5   arbitrability as to all but the claims specifically exempted by the [] Agreement." *Id.* (quoting *Rent-*

6   *A-Center*, 561 U.S. at 67).

7       **C.      The Delegation Provisions Are Not Unconscionable**

8       "Because a court must enforce an agreement that, as here, clearly and unmistakably

9   delegates arbitrability questions to the arbitrator, the only remaining question is whether the

10  particular agreement to *delegate* arbitrability—the Delegation Provision—is itself

11  unconscionable." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (citing *Rent-A-*

12  *Center*, 561 U.S. at 73–74 (2010)) (emphasis in original).

13      Defendants, citing to *Brennan*, point out that "Plaintiffs do not argue that the delegation

14  clause is procedurally [or substantively] unconscionable," ECF No. 36 at 3, and therefore "there is

15  nothing for the Court to do but compel the Parties' disputes to the arbitrator." *Id.* at 4.  In

16  *Brennan*, the Ninth Circuit held that "since Brennan failed to make any arguments specific to the

17  delegation provision, and instead argued that the Arbitration Clause *as a whole* is unconscionable

18  under state law, [the Court] need not consider that claim because it is for the arbitrator to decide in

19  light of the parties' 'clear and unmistakable' delegation of that question." (internal quotations and

20  citations omitted) (emphasis in original).

21      So too here.  Plaintiffs make no arguments concerning the unconscionability of the

22  *delegation* clause.  Accordingly, the Court declines to consider whether the delegation provision

23  itself is unconscionable.

24      **D.      Class Action Waiver**

25      Defendants request that the court dismiss or strike the class claims, as "Plaintiffs agreed to

26  a Class Action Waiver . . . and specifically agreed that they would have 'no right or authority for

27  any dispute to be bought, heard, decided, or arbitrated as a class and/or collective action . . . .'"

28  ECF No. 29-1 at 17 (quoting ECF No. 29-2 at 16, 22).  Plaintiffs contend that the "arbitration

United States District Court
Northern District of California

7

agreement is unconscionable" and thus the class claims (and indeed all claims) "must be found void as a matter of law.  ECF No. 35 at 20; *see id.* at 11.  Under California law, "procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (emphasis omitted).  However, "they need not be present in the same degree."  *Id.*  Courts employ "a sliding scale" approach whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*  For the reasons set forth below, the Court will dismiss Plaintiffs' class claims.

### 1.    Substantive Unconscionability

"Substantive unconscionability examines the fairness of a contract's terms" and is concerned about "terms that are unreasonably favorable to the more powerful party."  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001–02 (9th Cir. 2021) (internal quotations omitted).  Plaintiffs argue that "[t]he arbitration agreement in this case is substantively unconscionable because it: (1) requires Plaintiffs to pay expenses that they would not be required to pay if they were in court related to witnesses' expenses; (2) imposes severe limitations on discovery; (3) mandates the parties and the arbitrator keep the arbitration proceedings confidential; and (4) contains a PAGA waiver."  ECF No. 35 at 12.  The Court analyzes each argument in turn.

### a.    Witness Expenses

First, Plaintiffs argue that the arbitration agreement "potentially requires Plaintiffs to bear expenses they would not be responsible to pay in a court of law."  ECF No. 35 at 16.  They highlight Section D-16 of the arbitration agreement in particular, which provides that "[t]he expenses of witnesses for either side shall be paid by the party requiring the presence of such witnesses."  *Id.*  Plaintiffs also claim that the agreement fails to define "expenses" or set the standard under which expenses can be awarded by the arbitrator.  *Id.*

Defendants' response is two-fold:  (1) they contend that Section D-10(c) of the agreement "expressly says that depositions will be taken in accordance with Rule 30 of the Federal Rules of Civil Procedure . . . which authorizes depositions by telephone or remote means," and (2) they

8

1    aver that Plaintiffs' concerns about the expenses they would incur are "hypothetical" and

2    "unfounded."  ECF No. 36 at 7.

3         First, the Court agrees with Defendants that Rule 30 allows remote depositions, which

4    inherently have lower costs than in-person depositions.  *See* Fed. R. Civ. P 30(b)(4) ("The parties

5    may stipulate—or the court may on motion order—that a deposition be taken by telephone or

6    other remote means.").  Second, while Plaintiffs' concerns about potentially bearing witness

7    expenses are well-taken, the Court finds that, at this juncture, they are not enough to be deemed

8    substantively unconscionable.  The arbitration agreement gives leeway to the arbitrator to impose

9    costs as appropriate.  *See* ECF No. 29-2 Section D-10(e) ("The arbitrator shall have the authority

10   to resolve all issues concerning discovery that may arise between the parties.").  Further, as

11   Defendants point out, the alternative route of pursuing claims in court would certainly require

12   Plaintiffs to bear some costs, as 18 U.S.C. § 1821 provides that "a witness in attendance at any

13   court of the United States . . . shall be paid the fees and allowances provided by this section."

14   These fees include "$40 per day for each day of attendance," "the time necessarily occupied going

15   to and returning from the place of attendance," "the actual expenses of travel on a common

16   carrier," mileage for "each witness who travels by privately owned vehicle," and an "allowance"

17   when an "overnight stay" is required, among others.  *Id.* § 1821(b)-(d).  Finally, although expenses

18   are not explicitly defined in the arbitration agreement, California law is clear that "[t]he absence of

19   specific provisions on arbitration costs [are] not [] grounds for denying the enforcement of an

20   arbitration agreement."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113

21   (2000)

22        Accordingly, the Court declines to find that Plaintiffs' potential witness expenses are

23   substantively unconscionable.

24              **2.      Limitations on Discovery**

25        Second, Plaintiffs argue that the arbitration agreement "imposes severe limitations on

26   discovery that will substantially limit Plaintiffs' ability to vindicate their statutory claims."  ECF

27   No. 35 at 14.  Defendants respond that "[a]rbitration need not permit all of the same discovery as

28   litigation but instead must provide adequate discovery."  ECF No. 36 at 8 (citing *Ramirez v.*

United States District Court
Northern District of California

1   *Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365, 385 (2022) (emphasis omitted).

2       It is well-established that "[a]dequate discovery is indispensable for the vindication of

3   statutory claims." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 715 (2004).  Adequate discovery,

4   however, does not mean "unfettered discovery." *Id.*  In California, parties may agree to something

5   "less than the full panoply of discovery available in California's discovery statutes." *Armendariz*,

6   24 Cal. 4th at 105–06.

7       Here, Section D-10 of the arbitration agreement states that each party shall be entitled to

8   propound and serve upon the other party one interrogatory that is limited to identifying witnesses,

9   as well as twenty-five document requests.  ECF No. 29-2 at 17, 23.  Each party is also entitled to

10  conduct a "maximum" of two eight-hour days of depositions of witnesses or of the parties.  *Id.*

11  Finally, "each party can request that the arbitrator allow additional discovery, and additional

12  discovery may be conducted under the parties' mutual stipulation or as ordered by the arbitrator."

13  *Id.*  The Court finds that the agreement's limits on discovery are adequate.  This is especially so

14  considering that the agreement sets a "floor, not a ceiling," and allows the parties to conduct more

15  discovery as needed.  ECF No. 36 at 8 (emphasis omitted); *see* ECF No. 29-2 at 17, 23.

16      Accordingly, the Court declines to find that the discovery limits are substantively

17  unconscionable.

18              **3.    Confidentiality**

19      Next, Plaintiffs argue that the confidentiality provision in Section D-8 of the agreement is

20  substantively unconscionable.  ECF No. 35 at 16.  It states that "[a]ll proceedings under this Policy

21  are private and confidential, unless applicable law provides to the contrary."  ECF No. 29-2 at 17,

22  23.  In support of their position, Plaintiffs rely on *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003),

23  *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), and *Pokorny v. Quixtar, Inc.*, 601

24  F.3d 987 (9th Cir. 2010), all of which held that the confidentiality provisions at issue were

25  unconscionable.

26      Plaintiffs' reliance on this caselaw misplaced.  As Defendants note, several years after

27  *Ting*, *Davis*, and *Pokorny* were decided, the California Court of Appeals reversed course, holding

28  that the arbitration agreement at issue was not unconscionable because there is nothing

United States District Court
Northern District of California

1    unreasonable or prejudicial about "a secrecy provision with respect to the parties themselves."

2    *Sanchez v. Carmax Auto Superstores California, LLC*, 224 Cal. App. 4th 398, 408 (2014)

3    ("*Carmax*").[1]  Even more recently, in 2017, the Ninth Circuit affirmed the reasoning of *Carmax*,

4    noting that "[i]n the absence of any decision on this issue from the California Supreme Court, we

5    are bound by *Carmax*, as the ruling of the highest state court issued to date."  *Poublon v. C.H.*

6    *Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017).

7         Accordingly, the confidentiality provision within the arbitration agreement does not render

8    it substantively unconscionable.

9                    **4.    PAGA Waiver**

10        Finally, Plaintiffs aver that the PAGA Waiver is substantively unconscionable.  ECF No.

11   35 at 19.  Defendants disagree, arguing that "PAGA claims may be split between individual and

12   non-individual claims by agreements to arbitrate, and courts must enforce agreements to arbitrate

13   PAGA claims on an individual basis."  ECF No. 36 at 10.

14                   **a.    PAGA Background**

15        Before delving into the arguments, a short background on PAGA is in order.  PAGA

16   allows an "aggrieved employee" to bring an action to recover civil penalties for violations of the

17   California Labor Code "on behalf of himself or herself and other current or former

18   employees."  Cal. Lab. Code § 2699(a).  Effectively, PAGA allows aggrieved employees to act as

19   private attorneys general and file suit as proxies of the state.  *See Adolph v. Uber Techs., Inc.*, 14

20   Cal. 5th 1104, 1113 (2023).  "A PAGA claim for civil penalties 'is fundamentally a law

21   enforcement action.'"  *Id.* at 1117 (quoting *ZB, N.A. v. Superior Ct.*, 8 Cal. 5th 175, 181 (2019)).

22        "In *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), the

23

24   _____

[1] In *Carmax*, the confidentiality provision required "that the arbitration (including the hearing and

25   record of the proceeding) be confidential and not open to the public unless the parties agree

     otherwise, or as appropriate in any subsequent proceeding between the parties, or as otherwise

26   may be appropriate in response to governmental or legal process." *Carmax*, 224 Cal. App. 4th at

     408.  Here, the arbitration agreement is fairly similar.  It provides "[a]ll proceedings under this

27   Policy are private and confidential, unless applicable law provides to the contrary.  The arbitrator

     shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law

28   provides to the contrary.  The arbitrator shall have the authority to make appropriate rulings to

     safeguard that confidentiality."  ECF No. 29-2 at 17, 23.

United States District Court
Northern District of California

1    California Supreme Court held that a predispute arbitration agreement containing a waiver of the

2    right to bring non-individual PAGA claims in court is invalid as against California public policy,

3    and that the [FAA] does not preempt the non-waivability of non-individual PAGA claims."

4    *Johnson v. Lowe's Home Centers, LLC*, 93 F.4th 459, 463 (9th Cir. 2024).

5        The United States Supreme Court subsequently reviewed *Iskanian* in the case of *Viking

6    River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022).  There, the Supreme Court "read *Iskanian* as

7    holding that predispute waivers of both individual and non-individual PAGA claims were

8    forbidden under California law."  *Johnson*, 93 F.4th at 463.  "*Viking River* interpreted *Iskanian* to

9    hold that PAGA requires joinder of individual and non-individual claims, such that both claims

10   must be tried in the same forum."  *Id.*  "Requiring parties to adjudicate a PAGA action entirely in

11   one proceeding, the high court said, 'compels parties to either go along with an arbitration in

12   which the range of issues under consideration is determined by coercion rather than consent, or

13   else forgo arbitration altogether.  Either way, the parties are coerced into giving up a right they

14   enjoy under the FAA.'"  *Adolph*, 14 Cal. 5th at 1118–19 (quoting *Viking River*, 596 U.S. at 661)

15   Thus, if the agreement at issue is covered by the FAA, *Viking River* would have compelled the

16   enforcement of agreements to arbitrate a PAGA plaintiff's individual claims.

17       Justice Sotomayor concurred in *Viking River* and expressly noted that the Court's holding

18   was based on its understanding of PAGA's joinder rule.  She wrote:  "Of course, if this Court's

19   understanding of state law is wrong, California courts, in an appropriate case, will have the last

20   word."  *Viking River*, 596 U.S. at 664 (Sotomayor, J., concurring).

21       One year later, in *Adolph*, the California Supreme Court did just that, clarifying that

22   "where a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an

23   order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate

24   non-individual claims in court."  *Adolph*, 14 Cal. 5th at 1123.

25                   **b.      PAGA Claim at Issue**

26       The result of the foregoing is that the California Supreme Court allows PAGA claims to be

27   split between individual and non-individual claims by agreements to arbitrate, and courts must

28   enforce agreements to arbitrate PAGA claims on an individual basis.  Here, the arbitration

agreement is not a "blanket waiver," but rather requires that Plaintiffs submit their individual PAGA claims to arbitration.  ECF No. 36 at 10; *see* ECF No. 29-2 at 16, 21.  Further, as Defendants note, "to the extent the PAGA waiver is unenforceable in any respect, [] the PAGA waiver [also] contains a 'severability clause in the agreement provid[ing] that if the waiver provision is invalid in some respect, any portion of the waiver that remains valid must still be enforced in arbitration.'"  ECF No. 36 at 10 (quoting *Viking River*, 596 U.S. at 662).  Thus, the Court concludes that there is nothing substantively unconscionable about forcing arbitration of Plaintiffs' individual PAGA claims.

In sum, there is nothing substantively unconscionable about the arbitration agreement, and therefore, the Court need not consider Plaintiffs' arguments concerning procedural unconscionability.  Further, because there is nothing substantively unconscionable about the agreement, the Court agrees with Defendants that Plaintiffs' class claims can be dismissed.

### E.    Stay of Non-Individual PAGA Claims

Finally, having established that the PAGA Waiver itself is not unconscionable, *see supra* at 11–13, the Court turns to Defendants' request that the Court stay Plaintiffs' non-individual PAGA claims pending the completion of arbitration.  Defendants argue that "staying the representative action pending arbitration of the individual claim avoids the need to relitigate a plaintiff's status as an 'aggrieved employee.'"  ECF No. 29-1 at 17–18.  In their opposition, Plaintiffs argue that a stay is not warranted, and cite to Judge Lee's concurrence in *Johnson* in support of this position.

*Johnson* is a recent decision where the Ninth Circuit addressed how "the California Supreme Court's decision in *Adolph* affect[ed] [the plaintiff's] non-individual PAGA claims," and whether "*Adolph* [is] inconsistent with *Viking River*."  93 F.4th at 464.  As to the first question, the Ninth Circuit remanded the plaintiff's non-individual PAGA claims because while "[*Johnson*] was on appeal to [the Ninth Circuit], the California Supreme Court in *Adolph* corrected *Viking River's* misinterpretation of PAGA [and held] that a PAGA plaintiff can arbitrate his individual PAGA claim but at the same time maintain his non-individual PAGA claims in court."  *Id.*  As to the second question, the Ninth Circuit held that "[t]here is nothing in *Adolph* that is inconsistent with the federal law articulated in *Viking River*."  *Id.* at 465.

1    In his concurrence, Judge Lee opined that the California Supreme Court's decision in

2    *Adolph*, which "held that the arbitration decision of a low-stakes individual PAGA claim could

3    have preclusive effect—at least for the statutory standing issue of who is an 'aggrieved

4    employee'—on the high-stakes non-individual PAGA claim in federal court[,]" "could tilt the

5    stakes of arbitration for defendants and undermine the benefits of arbitration for everyone."  *Id.*

6    Nonetheless, he concluded that while there is no "clear conflict between *Adolph* and the FAA[,]"

7    the Ninth Circuit "should carefully examine the facts of future cases to see if this lurking tension

8    morphs into an irreconcilable conflict." *Id.*

9    Nothing in Judge Lee's concurrence undermines the full force of the *Adolph* decision,

10   which held that "[w]hen an action includes arbitrable and non-arbitrable components . . . the court

11   may 'stay the trial of the action until such arbitration has been had in accordance with the terms of

12   the agreement.'"  *Adolph*, 14 Cal. 5th at 1123.  Accordingly, Plaintiffs' non-individual claims will

13   be stayed pending resolution of the arbitration.  *See Bracamontes v. United Rentals, Inc.*, No.

14   223CV02697DADCSK, 2024 WL 1884052, at *6 (E.D. Cal. Apr. 30, 2024) (staying "plaintiff's

15   representative PAGA claims in keeping with the decision and instruction of the California

16   Supreme Court in *Adolph*").

17                                    **CONCLUSION**

18   Defendants' motion to compel arbitration is granted.  The Court hereby sends Plaintiffs'

19   individual claims to arbitration, dismisses the class claims, and stays the remaining proceedings

20   pending arbitration.  This order shall not be considered a dismissal or disposition of this action

21   against any party.

22   The parties shall jointly notify the Court within seven days of the conclusion of arbitration,

23   and shall request that the Court reopen this matter or take other action consistent with the

24   resolution of the arbitration.

25       **IT IS SO ORDERED.**

26   Dated:  October 15, 2024

27   _____

28                        JON S. TIGAR
                          United States District Judge

United States District Court
Northern District of California

14